# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **HECTOR LEYVA-MARTINEZ** | : | **DOCKET NO. 12-cv-2333** |
| **D.O.C. # 518766** | | **SECTION P** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **BURL CAIN, WARDEN** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed pro se by Hector Leyva-Martinez ("petitioner") [docs. 3, 9]. Petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Louisiana State Penitentiary at Angola ("Angola"). Burl Cain ("respondent"), warden of Angola, has responded [doc. 19].

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons IT IS RECOMMEDED that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

## I.
### BACKGROUND

#### A. *Conviction and Direct Appeal*

On the evening of May 29, 2004, the victim, M.S., had been at a night club in Lake Charles, Louisiana, with friends. Doc. 19, att. 6, p. 140. After starting to feel sick, she went outside to her parked truck to get some air and fell asleep. *Id.* at 142. She awoke some time later to find the

petitioner on top of her, penetrating her vaginally from behind. *Id.* at 643. M.S. testified that she screamed for him to stop, fought him, and tried to get her arm free to hit him, but that the petitioner was choking her and hit her when she resisted.[1] *Id.* at 143–45. After he had finished raping her, the petitioner forcibly pushed M.S. out of her truck and drove away. *Id.* at 146. The truck was later located at the petitioner's address. *Id.* at 141, 147.

The petitioner's trial began on January 9, 2007, before a jury sitting in the 14th Judicial District Court, Calcasieu Parish, Louisiana. Doc. 19, att. 3, p. 29. During his trial, the petitioner challenged admission of statements he made during custodial interrogation on the grounds that the verbal Miranda warning he received was ineffective because he could not read or write English. Doc. 19, att. 5, p. 3–77. In that hearing, the petitioner stated that he was born in Cuba but had lived in the United States since 1980 — first in Miami until 2002 and then in Lake Charles, Louisiana up until the time of the hearing.  *Id.* at 68.  INS documentation shows that the defendant would have been around fourteen years old when he immigrated. Doc. 19, att. 4, p. 181. Three different detectives from the Calcasieu Parish Sheriff's Office testified that the petitioner responded to their questions in English, in complete sentences. Doc. 19, att. 5, pp. 11–17, 32–36, 58–59. The petitioner also testified competently at the hearing, listening to questions in English and responding in complete sentences without the aid of an interpreter. *State v. Leyva-Martinez*, 981 So.2d 276, 283 (La. Ct. App. 3d Cir. 2008).  Consequently, the trial judge denied the Motion to Suppress. Doc. 19, att. 3, pp. 75–77.

---

[1] Testimony as to M.S.'s resistance was corroborated by photographs taken soon after at the hospital, showing scratches and bruises to M.S.'s neck, back, and arms, and a handprint where she stated the petitioner struck her, and by the testimony of the nurse who performed the sexual assault examination. Doc. 19, att. 6, pp. 147–49; Doc. 19, att. 5, pp. 164–70. Testimony as to the rape and the petitioner's identity was also corroborated by the findings of a pelvic examination and by DNA testing. Doc. 19, att. 5, pp. 164–70; Doc. 19, att. 6, pp. 91–93, 149.

Before the case was submitted to the jury, the judge issued the following instruction (among others): "Intent is a question of fact which may be inferred from the circumstances. You may infer that the defendant intended the natural and probable consequences of his act." Doc. 19, att. 7, p. 59. The defense counsel objected contemporaneously on the grounds that this instruction relieved the state of its burden of proving intent beyond a reasonable doubt. *Id.* at 77.

On January 17, 2007, the petitioner was convicted of carjacking and aggravated rape for the events of May 29, 2004, by a jury sitting in the 14th Judicial District Court, Calcasieu Parish, Louisiana. Doc. 9, p.1; *State v. Leyva-Martinez*, 981 So.2d at 280. He was thereafter sentenced to two consecutive sentences of imprisonment: ten years at hard labor for the carjacking and life without the benefit of parole, probation, or suspension of sentence for the aggravated rape. *Leyva-Martinez*, 981 So.2d at 280. The petitioner appealed to the Louisiana Third Circuit Court of Appeal, citing four assignments of error: (1) insufficient evidence to support either conviction, (2) error by the judge in denying the Motion to Suppress, (3) erroneous jury instructions, and (4) excessive sentences. *Id.* The Louisiana Third Circuit Court of Appeals reviewed all of these contentions and found them to be without merit, resulting in an affirmation of the conviction and sentences. *Id.* The petitioner's request for review to the Louisiana Supreme Court was denied on January 30, 2009. *State v. Leyva-Martinez*, 999 So.2d 747 (La. 2009). It does not appear that the petitioner sought further relief from the United States Supreme Court.

### B.  *State Collateral Review*

The petitioner then sought collateral review through the State of Louisiana by completing an application for post-conviction relief on August 10, 2009. Doc. 19, att. 11, p. 57. He claimed ineffective assistance of counsel based on his trial attorney's failure to urge that the Cuban consulate be notified of the petitioner's arrest, pursuant to the Vienna Convention on Consular

Relations. *Id.* at 61, 67. This application was denied on April 19, 2010, leading the petitioner to seek review of this decision from the Louisiana Third Circuit Court of Appeals on June 22, 2010. *Id.* at 120. The Third Circuit affirmed the trial court's denial on November 22, 2010, and the petitioner sought immediate review at the Louisiana Supreme Court, which denied his application on December 16, 2011. *Id.* at 120, 123.

### C.  Habeas Application

The petitioner filed the instant application seeking relief under 28 U.S.C. § 2254 with the United States District Court for the Eastern District of Louisiana on August 10, 2012. Doc. 1. The Eastern District of Louisiana transferred the application to this court on September 7, 2012. *Id.* In the instant application, the petitioner again raises as his basis for relief ineffective assistance of counsel due to failure to urge notification of his consulate. Doc. 9, pp. 5–6. He also renews claims from his direct appeal of insufficient evidence, erroneous denial of the Motion to Suppress, and erroneous jury instruction on intent. Doc. 9, att. 1, pp. 4–5.

## II.
## LEGAL STANDARDS ON HABEAS REVIEW

### A.  Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This limitation period generally runs from the date that the conviction becomes final. *See* 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). However, the limitations period is not tolled for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. Procedural Default and Exhaustion of State Court Remedies

Before we proceed to a consideration of the merits of the issues raised in the petition, we must also consider the doctrines of procedural default and exhaustion of state court remedies.

#### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g., Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts in a "procedurally proper manner." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Each claim must also be presented to the state's highest court, even when review by that court is discretionary. *Castille v. Peoples*, 109 S.Ct. 1056 (1989). In Louisiana, the highest court is the Louisiana Supreme Court. *See* LSA–Const. Art. 5, § 5(a) ("The supreme court has general supervisory jurisdiction over all other courts . . . .")

Thus, in order for a Louisiana prisoner to have exhausted his state court remedies, he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.1997). Exhaustion requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims. *Picard v. Connor*, 404 U.S. 270, 276 (1971).

### 2.   *Procedural Default*

When a prisoner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, the prisoner may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546 (1991). A failure to satisfy state procedural requirements results in a forfeiture of a prisoner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter but rather is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which

he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal habeas claims. *Bledsue v. Johnson,* 188 F.3d 250, 254–5 (5th Cir.1999).

### C.  *General Principles*

Federal courts of the United States have jurisdiction over writs of habeas corpus on behalf of a person in state custody only if that person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

When a state district court adjudicates a petitioner's claim on the merits, this court is to review the state court adjudication under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, i.e. whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts

that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted). In order for a state court's application of federal law to be unreasonable, the application must be more than simply erroneous but rather so incorrect as to be objectively unreasonable. *Dilosa v. Cain*, 279 F.2d 259, 262 (5th Cir. 2002).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

### III.
#### ANALYSIS

As a preliminary matter, we review the petitioner's application for timeliness, procedural default, and exhaustion of state court remedies. If we find that the claim is procedurally viable, we then look to its merits under the general standards set forth in Section II.C.

#### A.  *Timeliness*

Here we note that the petitioner's conviction became final 90 days after the judgment of the Louisiana Supreme Court, when his time for seeking review by the U.S. Supreme Court expired. *See* Sup. Ct. R. 13. Therefore the one year limit for filing his § 2254 petition began running on April 30, 2009. It was suspended by his application for post-conviction relief on August 10,

2009, after 102 days. The clock began running again when the Louisiana Supreme Court denied review of this application on December 16, 2011, and ran for another 238 days until the filing of the instant application. Therefore a total of 340 days were counted towards the one-year limit, meaning that the instant application is timely under § 2244(d).

### B. Exhaustion of State Court Remedies and Procedural Default

Finding that the application is timely, we next apply the doctrines of exhaustion of state court remedies and procedural default in order to determine whether we can proceed to the merits of the claim.

#### 1. Exhaustion of state court remedies

The petitioner renews three claims from his direct appeal, all of which were properly presented to the available state courts. His claim of ineffective assistance of counsel relating to consular notification, raised for the first time on his state application for post-conviction relief, was likewise reviewed by all available state courts. The petitioner has been consistent in his use of factual allegations and legal theories for all claims. Therefore we find that the petitioner has exhausted his state court remedies for all claims in the instant petition.

#### 2. Procedural default

Applying the standards described above, we find no grounds for considering any claims procedurally defaulted for either the claims raise on direct appeal or the ineffective assistance of counsel claim raised on state collateral review. None of the petitioner's claims was dismissed on procedural grounds. Instead, the Fourteenth Judicial District and the Louisiana Third Circuit Court of Appeals considered all claims on the merits. The Louisiana Supreme Court likewise cited no procedural grounds in its discretionary denials of review of the Third Circuit's decisions. Therefore, we find no grounds for applying procedural default to any of the claims presented here.

### C.  *Substantive Analysis*

Having determined that all claims can be heard by this court under § 2254, we ascertain the standard of review to be applied. We acknowledged above that all federal claims were adjudicated on the merits, inviting the deferential standard of § 2254(d). Seeing no dispute as to the facts involved in the case, with the exception of the Motion to Suppress (discussed infra), and observing that the issue instead is whether they meet statutory definitions, we find that most of the claims involve mixed questions of law and fact.[2]

Therefore the appropriate standard of review on all claims except the Motion to Suppress is whether the state court's adjudication was contrary to federal law or involved an application of federal law that was not only erroneous but also objectively unreasonable. We now consider each of the petitioner's claims under this standard, save for the Motion to Suppress, which is considered on whether it is based on an unreasonable determination of fact.

### 1.  *Insufficient Evidence*

The petitioner alleges that, in violation of his right to due process under the Sixth and Fourteenth Amendments, the evidence introduced at trial was only sufficient to support a conviction of simple rape or forcible rape, and that there was insufficient evidence to support a conviction for carjacking. We review a claim of insufficient evidence by determining whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted).

---

[2] "The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact: The historical facts are admitted or established, the rule of law is undisputed, and the issue is . . . whether the rule of law as applied to the established facts is or is not violated." *Ornelas v. United States*, 116 S.Ct. 1657, 1662 (internal quotations and alterations omitted).

### a. *Evidence for rape conviction*

The petitioner claims that a conviction of aggravated rape is unsupported because of the lack of evidence of sufficient resistance or use of force.

In Louisiana, aggravated rape is defined as a rape that occurs "[w]hen the victim resists the act to the utmost, but [the] resistance is overcome by force" or "[w]hen the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution." LA. REV. STAT. 14:42(A). Forcible rape occurs "[w]hen the victim is prevented from resisting . . . by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape." Simple rape occurs "[w]hen the victim is incapable of understanding the nature of the act" due to intoxication, "and the offender knew or should have known of the victim's incapacity."

Under the evidence described in Section I, a jury found that the characteristics of the crime best fit the definitions of aggravated rape. As the respondent notes, it is settled within the jurisdiction where the petitioner was convicted that victim testimony alone can establish the elements of a sexual offense, even without corroborating evidence from the state. *State v. Scheznaider*, 852 So.2d 450, 457 (La. Ct. App. 3d Cir. 2003) (collecting cases). It is within the trier of fact's discretion to determine the credibility of witness testimony, including testimony by a victim. *Id.*

On these facts, under the standards articulated above, we must conclude that the evidence was sufficient to convict the petitioner of aggravated rape. The jury determined the credibility of M.S.'s testimony, which was bolstered by evidence of her injuries, and determined that the resistance she described best fit within the statutory definition of aggravated rape.[3] The petitioner

---

[3] The fact that the petitioner was choking her during the attack could also fit within the second definition of aggravated rape, where the victim was threatened with "great and immediate bodily harm with apparent power of execution."

contends that the fact that M.S. was unconscious when the attack began meant that she was either incapable of resisting or incapable of understanding the nature of the act, in line with the definitions of forcible rape or simple rape. However, we see no requirement within the statute that the resistance or attempted resistance for aggravated rape match the entire duration of the attack. Therefore we cannot find that the conviction of aggravated rape was contrary to or involved an erroneous application of the petitioner's constitutional rights.

### b. Evidence for carjacking conviction

The petitioner also claims that there was insufficient evidence to support a carjacking conviction because the state failed to show that he had used the requisite amount of force.

Under Louisiana law, carjacking is defined as the intentional taking of a motor vehicle from the presence of its owner, passenger, or any person in lawful possession, "by the use of force or intimidation." LA. REV. STAT. 14:64.2(A). The petitioner claims that the burden of proof was not met here because the state did not establish that he had a weapon.

Possession of a weapon plainly is not a requirement of the offense. We find the unchallenged fact that the petitioner forcibly pushed M.S. out of the vehicle to be sufficient grounds for a reasonable determination by the jury that the force element of the offense was met. Therefore we also cannot hold find the carjacking conviction was contrary to or involved an erroneous application of his constitutional rights.

As such, we hold that the petitioner's sufficiency of evidence claim for the rape and carjacking convictions do not warrant federal habeas relief.

### 2.  *Denial of Motion to Suppress*

The petitioner next claims that his due process rights under the Sixth and Fourteenth Amendments were violated by denial of his Motion to Suppress. He claims that his waiver of right to remain silent and right to counsel was ineffective because he did not understand the warning and that, as a result, the statements he made during his interrogation were involuntary. It is the state's burden to prove that a defendant's waiver of rights was knowing and intelligent. *Miranda v. Arizona*, 86 S.Ct. 1602, 1628 (1966). The state asserts that the defendant did effectively waive his Miranda rights because he had a sufficient command of spoken English.

We note that this issue presents a question of fact: whether or not the petitioner understood the Miranda warning as read to him in English. Accordingly, the petitioner must show that the trier of fact's determination was objectively unreasonable. Upon our review of the evidence put forth at the Motion to Suppress, we find that there was ample ground for the trial judge to make his ruling. In addition to the testimony of three detectives who had spoken with the petitioner, the petitioner took the stand and demonstrated his English proficiency before the trier of fact. The transcript indicates that he understood the questions put to him in English and was able to respond in kind. We find that the trier of fact's determination on the motion to suppress was in fact objectively reasonable, meaning we cannot hold that the petitioner's constitutional rights were thereby violated.  The denial of the motion to suppress thus offers no basis for federal habeas relief.

### 3.  *Jury instructions*

The petitioner's final assignment of error from his direct appeal relates to the trial judge's instruction to the jury on intent: "**Intent is a question of fact which may be inferred from the circumstances. You may infer that the defendant intended the natural and probable**

**consequences of his act**." The petitioner claims that these instructions impermissibly shifted the burden of proof, violating his right to due process under the Sixth and Fourteenth Amendments.

The petitioner relies on *Sandstrom v. Montana*, in which the Supreme Court held that a trial court erred in instructing a jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts."  99 S.Ct. 2450, 2452 (1979). The Court found that this instruction could be read as either a burden-shifting or conclusive presumption, both of which would impermissibly relieve the state of its burden and invade the fact-finding role of the jury. *Id.* at 2459.

The bar against certain presumptions does not invalidate all inferences, however. As the respondent notes, the Supreme Court has recognized that jury instructions may still include permissive inferences without "necessarily implicat[ing] the concerns of *Sandstrom*." *Francis v. Franklin*, 105 S.Ct. 1965, 1971 (1985). A permissive inference is one that "still requires the state to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Id.* The Fifth Circuit has ruled in favor of inferences similar to the one used at the petitioner's trial, finding in *Dupuy v. Cain* that it was acceptable to instruct a jury that "it is reasonable to infer that a person ordinarily intends all the natural and probable consequences of acts knowingly done or knowingly omitted by him . . . ."

We are persuaded here that the state court findings upholding the jury instructions were consistent with federal law. The jury instructions here are distinguishable from *Sandstrom* because they specifically note an inference, rather than a presumption, which can only arise after the state has proven all of the facts involved in the inference. We also note that the language of the instruction is consistently permissive, offering that the jury "may" apply this inference and reminding the jury of its ultimate role/authority as finder of fact to determine intent as a factual

issue. We therefore find that the jury instructions did not violate the petitioner's constitutional rights, and so this claim offers no basis for federal habeas relief.

### 4.  *Ineffective assistance of counsel relating to consular notification*

We now turn to the petitioner's claim that his attorney's failure to raise the issue of consular notification was an error amounting to ineffective assistance of counsel, in violation of the petitioner's rights to due process and an attorney under the Fifth, Sixth, and Fourteenth Amendments.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict.  *Id.* at 2064. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness.  *Id.* Judges have been cautioned towards deference in their reviews of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). The resulting prejudice must also be so great that it creates a substantial likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (internal quotations and alterations omitted). A petitioner must meet both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

As a preliminary matter, we must consider whether a general right to consular notification existed in the first place. We will then look to whether the attorney's role in the lack of it satisfied

*Strickland*'s first prong of seriousness and then consider whether the petitioner's trial was thereby prejudiced.

### a. Right to consular notification

The petitioner claims that, as a Cuban national, he was entitled to consular notification of the criminal charges against him under the Vienna Convention on Consular Relations ("VCCR").[4] The VCCR, a treaty which was ratified in the United States in 1969 and to which Cuba is also a signatory, governs "relations between individual nations and foreign consular officials." *Sanchez-Llamas v. Oregon*, 126 S.Ct. 2669, 2691 (2006); VCCR, 21 U.S.T. 77 (1970). Article 36 imposes on authorities detaining foreign nationals an obligation to (1) inform the consulate of the arrest or detention without delay, (2) forward communications from the detained national to the consulate without delay, and (3) inform the detained national of his rights under this article without delay. VCCR, art. 36, 21 U.S.T. 77 (1970).

Treaties to which the United States is a signatory become the supreme law of the land when they are confirmed by the Senate, as the VCCR was in 1969. U.S. Const. art. II, § 2, cl. 2; art. IV, cl. 2. Debate has therefore arisen as to whether the VCCR creates individual rights for foreign nationals who are criminal defendants and, if a right exists, what is the remedy for its violation. *See, e.g.*, *United States v. Nai Fook Li*, 206 F.3d 56, 61 (1st Cir. 2000) (en banc); *United States v. Cordoba-Mosquera*, 212 F.3d 1194, 1195–96 (11th Cir. 2000); *United States v. Page*, 232 F.3d 536, 540–41 (6th Cir. 2000).

---

[4] We note that the United States and Cuba had no formal diplomatic relations at the time, though informal diplomatic relations existed under key restrictions through the Cuban Interests Section in Washington, D.C. Karen DeYoung, *U.S. and Cuba Set to Formally Reestablish Diplomatic Relations*, Washington Post, July 17, 2015, *available at* https://www.washingtonpost.com/world/national-security/us-cuba-prepare-to-re-establish-diplomatic-relations/2015/07/17/5304d4f6-2cc4-11e5-bd33-395c05608059_story.html?tid=ptv_rellink.

The Supreme Court addressed this issue in *Sanchez-Llamas* when it held that violation of Article 36 did not create grounds for suppression of evidence, because the VCCR had not provided that a breach created grounds for suppression and the federal courts lacked the authority to expand the treaty's terms to impose judicial remedies on the state courts where there was no constitutional violation. 126 S.Ct. at 2678–80. The Court also found that the issue of consular notification under Article 36 could still be asserted as part of due process claim or otherwise raised at trial to secure assistance.[5] *Id.* at 2682.

We observe that ineffective assistance of counsel claims are not limited to denials of constitutional rights, but instead to general deficiencies in performance by an attorney to whom a defendant has a constitutional guarantee. *See Strickland*, 104 S.Ct. at 2064. The Court recognized ways in which the right to consular notification could be asserted by an individual, though it specifically avoided ruling on whether Article 36 created individually enforceable rights.[6] The Fifth Circuit had earlier ruled that it did not. *United States v. Jiminez-Nava*, 243 F.3d 192, 198 (5th Cir. 2001). Its holding is still cited affirmatively in the wake of *Sanchez-Llamas. E.g.*, *Pagonis v. San Antonio Police Dept.*, No. 2:13-cv-0023, 2013 WL 1333462 at *2 (N.D. Tex. Apr. 2, 2013). Therefore, in the absence of a more definitive statement from the Supreme Court, we are bound by Fifth Circuit precedent on the issue. However, recognizing that consular notification could still result in assistance that could be helpful at trial (see note 5 and discussion below at section III.C.4.c), we proceed in our analysis of whether the petitioner's attorney ought to have raised the issue.[7]

---

[5] "A defendant can raise an Article 36 claim as part of a broader challenge to the voluntariness of his statements to police. If he raises an Article 36 violation at trial, a court can make appropriate accommodations to ensure that the defendant secures, to the extent possible, the benefits of consular assistance." *Sanchez-Llamas*, 126 S.Ct. at 2682.

[6] "[W]e assume, without deciding, that Article 36 does grant [the petitioners] such rights." *Id.* at 2677–78. *See also Medellín v. Texas*, 128 S.Ct. 1346, 1357 n. 4 (2008) (finding it unnecessary to rule on the question but assuming without deciding that Article 36 creates individually enforceable rights).

[7] We also note that, though an individual right might not be created here, it would still be within the discretion of the trial court to stay proceedings and allow for consular assistance, particularly with charges as serious as those faced by the petitioner and if a denial of consular assistance implicated the due process concerns noted in *Sanchez-Llamas*.

### b.   Whether failure to note lack of consular notification amounted to deficient performance

The question for *Strickland* purposes, then, is whether the petitioner's attorney performed deficiently by failing to know of this requirement, or by knowing of it and nonetheless failing to raise it with the court.

The respondent does not contend that it would have been objectively unreasonable to expect a criminal defense attorney to know of the existence of Article 36, which had been the law of the land for thirty-five years at the time of the petitioner's arrest. In fact, the respondent points out that a detainer notice issued by the former Immigration and Naturalization Service in 2004, after the petitioner's arrest, shows that his status as a Cuban national was known well before his trial began in 2007. Doc. 19, att. 4, p. 181.

On these facts, it appears objectively reasonable to expect the petitioner's attorney to know of the requirement of consular notification and to inquire whether it had taken place. We do not necessarily find that an attorney would be obligated to urge consular notification on these facts if he believed that it was not warranted or would not be in his client's best interests. *See* Kadish & Olson, *The Supreme Court, The Right to Consul, and Remediation*, 27 MICH. J. INT'L L. 1185, 1219 (2006) (noting that a decision not to involve the consulate could be a strategic one). However, deficiencies that are allegedly strategic choices must still be supported by a showing that the attorney made a reasonable investigation to support those choices. *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). We do not have adequate information in the record before us to support if or to what extent the petitioner's attorney investigated the option of consular notification, or what reasoning he might have had for any decisions he made in declining to pursue it.

We acknowledge, under our cautions to eliminate the distorting effects of hindsight, that it is still the responsibility of the detaining authority and not the defense attorney to alert the

consulate. Even so, as outlined below, consular notification could have important ramifications for certain criminal defendants who are arrested or detained on foreign soil. Therefore, as we do not have case-specific justification here from the petitioner's attorney, we must proceed as though his failure to raise the issue satisfies *Strickland*'s first prong of deficient performance.

### c.   *Whether failure to note lack of consular notification prejudiced the petitioner*

The final question, then, is whether a lack of consular notification was so prejudicial that the alternative would have created a substantial likelihood of a different verdict. Here we address the speculation from both petitioner and respondent on what type of aid the consulate could have provided to his case and how it might have impacted the outcome.

In this regard, the Seventh Circuit has offered significant guidance on what types of consular assistance may be available. *Osagiede v. United States*, 543 F.3d 399, 403–04. For instance, the consulate can help the defendant understand differences between the receiving state's legal system and that of the sending state's, reducing the risk of cultural misunderstandings leading to legal mistakes. *Id.* at 403. The consulate can also assist in building the defendant's case by, among other things, obtaining evidence or witnesses from his home country. *Id.* at 403–04.

We do not find either of these areas of assistance to be critical to the outcome in the petitioner's case. He had been in the United States for approximately twenty-four years at the time he was arrested, since the age of 14. Given the petitioner's length of residency and young age at immigration, we cannot see what interpretive or investigative assistance the Cuban consulate could have provided that would have been in the least bit material to his case. Therefore we find that there was no prejudice from the lack of consular notification to the petitioner's defense and so the petitioner has not satisfied the second prong of *Strickland*. Accordingly, the ineffective assistance of counsel claim offers no grounds for federal habeas relief.

## III.
### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 19th  day of October, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE